IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JENNIFER ST. JOHN, Individually and as Personal
Representative of The Estate of STEVE M. ST.
JOHN,

           Plaintiff,

vs.                                         08cv229 JCH/KBM

ROBERT WILCOX, M.D., and GILA REGIONAL
MEDICAL CENTER,

           Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Robert Wilcox, M.D.'s ("Dr. Wilcox") Motion for Summary Judgment, filed May 29, 2009 [Doc. 65] and Defendant Gila Regional Medical Center's ("GRMC") Second Motion for Summary Judgment, filed May 28, 2009 [Doc. 64]. Having considered the motions, briefs, attachments, and relevant law, and being otherwise fully informed, the Court finds that Dr. Wilcox's motion should be GRANTED and that GRMC's motion should be DENIED.

## BACKGROUND

This case arises from the alleged poor treatment that Plaintiff's father, Steve St. John ("Mr. St. John"), received at the hands of Dr. Wilcox and Dr. Wilcox's alleged employer, GRMC. Due to the procedural posture of the case, the Court views the following facts in the light most favorable to Plaintiff and allows Plaintiff all reasonable inferences to be drawn from the evidence. *See Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 484 (10th Cir. 1995). Several years prior to the incident at issue in this case, Mr. St. John suffered brain damage and had, since that

time, been taking a number of medications prescribed as a result of his injuries.  In an attempt to wean himself off of some of the medications, he ceased taking them shortly before this incident.  Perhaps as a result of this, he lost consciousness late in the evening of June 13, 2007.  His family called an ambulance, which eventually took him to the emergency room of GRMC, where he was seen by Dr. Wilcox.

When Mr. St. John first arrived at the hospital, he was thoroughly unresponsive.  A short time after being placed in a bed, Mr. St. John regained consciousness and became very aggressive and disoriented.  He fought with hospital staff and his family and had to be restrained.  Dr. Wilcox then ordered Mr. St. John's release from the hospital, allegedly before establishing the cause of his behavior or making any attempt to stabilize his condition.  Dr. Wilcox gave this order despite Mr. St. John's family's urging that he be kept overnight for further observation and testing.  Mr. St. John was still violent and agitated upon his return to the family home.  Less than 24 hours after being released from the hospital, Mr. St. John took his own life.

On March 4th, 2008, Mr. St. John's wife filed suit against Dr. Wilcox and GRMC.  The suit alleges that Dr. Wilcox's treatment fell short of the standard of care required by state negligence statutes and that GRMC violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.  *See* Complaint [Doc. 1].  On January 28, 2009, Plaintiff filed an amended complaint, containing the same allegations, but substituting Mr. St. John's daughter, Jennifer, as Plaintiff in place of the initial Plaintiff, Mr. St. John's wife, Sue.  *See* Amended Complaint [Doc. 43].  On February 26, 2009, the Court granted Plaintiff's motion to substitute Jennifer St. John as Plaintiff.  *See* Doc. 51.

The Court issued its Scheduling Order on January 5, 2009, listing May 15, 2009 as the deadline for Plaintiff's disclosure of expert witnesses.  *See* Doc. 37.  Plaintiff failed to timely

name an expert witness or to move for an extension of time prior to the deadline.  In an attempt to circumvent this failure, Plaintiff later moved to either stay the litigation or to dismiss the claims against Dr. Wilcox without prejudice with leave to refile after acquisition of a medical expert.  *See* Doc. 74.  In an Order dated September 10, 2009, the Court adopted the Report and Recommendation of the Magistrate Judge [Doc. 97] and denied Plaintiff's motion.  *See* Doc. 98.  Thus, Plaintiff is left to attempt to proceed without a medical expert.  Both Defendants have moved for summary judgment on the ground that Plaintiff cannot succeed in her claims without the testimony of a medical expert.[1]  On June 2, 2009, the Court stayed discovery pending, *inter alia*, resolution of these two pending motions for summary judgment.  *See* Doc. 70.

## ANALYSIS

A. Medical Negligence Claim against Dr. Wilcox

In order to prevail on a state claim of medical malpractice in New Mexico, a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the community; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries.  *See Blauwkamp v. Univ. of New Mexico Hosp.*, 114 N.M. 228, 231 (Ct. App. 1992).  Ordinarily, expert medical testimony is necessary to establish the relevant standard of care and any deviation from it.  *See Pharmaseal Labs v. Goffe*, 90 N.M. 753, 758 (1977);

---

[1] GRMC's motion also seeks summary judgment on the grounds that the initial Plaintiff, Sue St. John, did not provide responses to GRMC's Requests for Admission, and that the matters posed in the Requests for Admission should therefore be admitted.  This argument was the basis of GRMC's initial motion for summary judgment, filed March 20, 2009 [Doc. 52], which was still pending at the time that GRMC filed its instant motion for summary judgment.  GRMC's earlier motion for summary judgment was denied following the filing of this motion, *see* Doc. 71, filed June 4, 2009, and its argument is therefore moot.

*Cervantes v. Forbis*, 73 N.M. 445, 448 (1964).  In very limited circumstances, the common experience of a layman may be such that the standard of care, negligence, or causation can be established without the testimony of an expert.  *See Pharmaseal*, 90 N.M. at 758; *Cervantes*, 73 N.M. at 448-49.  This is not such a case.  The Court is not able, nor would a jury be qualified on its own, without expert testimony, to determine what the standard of care is with respect to screening a patient brought into the emergency room unconscious or with respect to releasing that patient after he regains consciousness.  Without expert testimony on this issue, Plaintiff cannot prove her negligence case against Dr. Wilcox, and he must be dismissed from the case.

In responding to Defendant Wilcox's motion for summary judgment, Plaintiff does not attempt to come forward with any medical evidence of standard of care or negligence.  Nor does she contend that she can make her case without expert medical testimony.  In fact, Plaintiff admits that she "has not been able to secure expert testimony needed to prove her claims of medical negligence against Defendant Wilcox."  Plaintiff's Response in Opposition to Defendant Robert Wilcox's Motion for Summary Judgment [Doc. 72] at 1.  Instead, Plaintiff's only response to Defendant Wilcox's motion for summary judgment is to note that she had filed a motion seeking to stay the case or, in the alternative, for a dismissal of Dr. Wilcox without prejudice.  As previously mentioned, that motion was denied.  With no response to Defendant's motion other than a reference to a since-denied motion of her own, Plaintiff has essentially failed to contest the issue.

    B.  <u>EMTALA Claim against GRMC</u>

At its heart, EMTALA does not prescribe a particular standard of care that hospitals must meet, but rather requires that each individual hospital provide a uniform level of treatment to all individuals who seek care at that hospital's emergency room and stabilize an emergency

condition of which it is aware prior to discharging or transferring the patient. In relevant part, the statute states that if an individual arrives at an emergency room and requests examination or treatment or has such a request made on his or her behalf, "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department...to determine whether or not an emergency medical condition...exists." 42 U.S.C. § 1395dd(a). If the hospital determines that the patient has an "emergency medical condition," as defined in 42 U.S.C. § 1395dd(e)(1), the hospital may not transfer the patient prior to stabilizing him or her unless certain conditions are met. *Id*. §§ 1395dd(b) and (c)(1). Plaintiff contends that GRMC violated both the "appropriate medical screening" requirement of section 1395dd(a) and the failure to stabilize prior to discharge/transfer requirement of section 1395dd(c)(1).[2]

Defendant GRMC contends that, just as she cannot prevail on her medical malpractice claim without expert testimony, Plaintiff cannot demonstrate a violation of EMTALA without presenting expert medical testimony. The Court disagrees. EMTALA is not a negligence or malpractice statute. *See Urban v. King*, 43 F.3d 523, 525 (10th Cir. 1994). In fact, its "requirements impose a 'strict liability' on a hospital." *Abercrombie v. Osteopathic Hosp. Founders Ass'n.*, 950 F.2d 676, 681 (10th Cir. 1991). In one sense, EMTALA sets an even higher bar for recovery than a negligence statute. But, as discussed below, it is this higher bar that actually enables a plaintiff to succeed without expert medical testimony, because the standards of proof require a demonstration of facts rather than opinion.

The requirement that a hospital provide an "appropriate medical screening" does not

---

[2] Although Plaintiff alleges a violation of two sections of EMTALA, she need only demonstrate a violation of one section in order to prevail on her claim. *See Abercrombie v. Osteopathic Hosp. Founders Ass'n.*, 950 F.2d 676, 680 (10th Cir. 1991).

mandate that the hospital create a screening procedure that will be adequate if followed; rather it mandates only that a hospital adhere to its own screening procedures for all patients.  *See Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 n.4.  To read the term "appropriate" as requiring a particular level of care for each patient would, in essence, turn EMTALA into a federal malpractice statute and would place the Court in the position of assessing whether a hospital's standard screening procedures are sufficient given the individual hospital's capabilities.  *See id.* at 522.  The Tenth Circuit has determined that this was not Congress's intent in passing EMTALA.  *See id.*  Instead, a hospital violates this section of EMTALA only when it does not follow its standard screening procedures with respect to a particular patient, regardless of the adequacy of those screening procedures.  *See id.*  Thus, to demonstrate an EMTALA violation, a plaintiff need only present evidence establishing the hospital's standard screening procedures and evidence that those procedures were not followed in the particular patient's case.  These are questions of fact and do not require opinion testimony.

     Similarly, a claim that a defendant hospital violated EMTALA's restriction against transferring an individual with a diagnosed emergency medical condition prior to stabilization is subject to proof by testimony regarding facts, not expert medical opinion.  In order to prevail on a claim that a hospital violated section 1395dd(c), a "plaintiff must prove that the hospital had actual knowledge of the individual's unstabilized emergency medical condition."  *Urban*, 43 F.3d at 526.  The predicate question for this type of claim is whether the hospital actually made the determination that the patient had an emergency medical condition, not whether the hospital *should* have made such a determination under the circumstances.  *See id.* at 526-27.  Failure to diagnose an emergency medical condition is appropriately remedied by state malpractice laws; EMTALA only covers actions taken by hospitals that have actually diagnosed an emergency

medical condition.  *See id*.  Actual knowledge is subject to factual proof rather than opinion testimony, so a medical expert is not required to prevail on this portion of the claim.

Discovery in this matter has been stayed, pending disposition of Defendants' motions for summary judgment.  Because the Court has determined that Plaintiff may proceed with her EMTALA claim in the absence of expert medical testimony, Plaintiff will have an opportunity to attempt to prove her claims through further discovery.  Defendant GRMC may again seek summary judgment at the close of discovery if Plaintiff fails to uncover factual evidence that the hospital did not follow its standard screening procedures in this case or that it had actual knowledge that Mr. St. John was suffering from an emergency medical condition.

Although the Court finds that a plaintiff may prove an EMTALA violation without the use of expert medical testimony, proving damages in the absence of such testimony could be more problematic.  EMTALA does not provide for a personal recovery based solely on a violation.  Instead, the statute requires a plaintiff to demonstrate that he or she suffered "personal harm as a direct result" of the hospital's violation.  42 U.S.C. § 1395dd(d)(2)(A).  In medical cases, proof of a causal link between the alleged violation and the alleged injury generally requires expert testimony.  Plaintiff has indicated her intent to seek discovery from Mr. St. John's treating psychiatric physicians, for the purpose of having them opine of the cause of his suicide, and has correctly pointed out that opinions of treating physicians are generally exempted from the expert disclosure requirements by the local rules of this Court.  *See* Plaintiff's Response in Opposition to Defendant Gila Regional's Second Motion for Summary Judgment [Doc. 73] at 5.  However, in exempting the opinions of treating physicians from expert disclosure requirements, courts in this District have generally limited such opinions to those based on direct treatment of the patient.  *See, e.g., Sturgeon v. ABF Freight Sys., Inc.*, Civ. No. 02-1317,

Memorandum Opinion and Order at 3-4 (D. N.M. January 14, 2004)(Browning, J.)(discussing limits on treating physician testimony and collecting cases from inside and outside of this District). Opinion testimony not drawn from personal care and treatment of the patient, such as an opinion based on the reports of other physicians, is still subject to Rule 26(a)(2)(B) disclosure. *See id*. Because the deadline for such expert disclosure has passed, any testimony from Mr. St. John's treating physicians will be strictly limited to conclusions drawn from their own treatment and personal observations of him. Whether Plaintiff can develop testimony sufficient to demonstrate causation, given these limitations, remains to be seen, but she will be given the opportunity to do so through further discovery.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Robert Wilcox, M.D.'s Motion for Summary Judgment [Doc. 65] is GRANTED and Defendant Gila Regional Medical Center's Second Motion for Summary Judgment [Doc. 64] is DENIED.

_____
**UNITED STATES DISTRICT JUDGE**